DONNA LOUISE BROOKS,

                Plaintiff,

v.                                                6:15-CV-1135
                                                      (GTS)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                 OF COUNSEL:

DESANTIS & DESANTIS                   MICHAEL V. DESANTIS
  Counsel for Plaintiff
286 Genesee Street
Utica, NY 13501-2171

U.S. SOCIAL SECURITY ADMIN.         JEREMY A. LINDEN, ESQ.
OFFICE OF REG'L GEN. COUNSEL
– REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## **DECISION and ORDER**

      Currently before the Court, in this Social Security action filed by Donna Louise Brooks, ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 10, 13.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted.

I.   RELEVANT BACKGROUND

   A.   Factual Background

Plaintiff was born on May 9, 1962. Plaintiff has a tenth grade education, and has past work as a cleaner, a labeler, a lunch monitor, a resident counselor, and a teacher's assistant. Generally, Plaintiff's alleged disability consists of injury to her back/neck, depression, and anxiety.

   B.   Procedural History

On July 17, 2012, Plaintiff applied for Supplemental Security Income, alleging disability beginning June 13, 2001. (T. 20.)[1] Plaintiff's application was initially denied on February 5, 2013, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.*) On November 19, 2013, Plaintiff appeared in a video hearing before the ALJ, Angela Miranda. (T. 32-66.) On July 23, 2014, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 13-31.) On August 5, 2015, the Appeals Council denied Plaintiff's request for review. (T. 1-7.) Thereafter, Plaintiff timely sought judicial review in this Court.

   C.   The ALJ's Decision

Generally, in her decision, the ALJ made the following six findings of fact and conclusions of law. (T. 22-31.) First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since July 17, 2012, the application date. (T. 22.) Second, the ALJ found that Plaintiff has the following severe impairments: (1) back impairment described as degenerative changes with disc bulges at L4-5 and L5-S1, with contact with S1 nerve but no mass effect and

---

[1] Page citations refer to the page numbers used on CM/ECF rather than the page numbers in the parties' respective motion papers.

periodically described as acute strains; (2) neck dysfunction described as mild degenerative changes at C3-4 and C6-7; and (3) mental impairments variously described as major depressive disorder/depression; generalized anxiety disorder, panic disorder without agoraphobia, and adjustment disorder with mixed disturbance of emotion and conduct. (T. 22-23.) The ALJ determined that Plaintiff's rib fracture, cardiac palpitations, exertional dyspnea, gastroenteritis, and gastro esophageal reflux disease (GERD) are not severe impairments. (*Id.*) Third, the ALJ found that Plaintiff's severe impairments, alone or in combination, do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1 (the "Listings"). (T. 23-25.) The ALJ considered Listings 1.04, 12.04, and 12.06. *(Id.)* Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 416.967(b)[2] with the following postural and mental limitations:

> the claimant has the capacity to occasionally lift and carry 20 pounds and to frequently lift and carry 10 pounds. The claimant has the unlimited capacity to push and pull up to the weight capacity for lifting and carrying. The claimant has the capacity to stand and walk 6-8 hours in an 8-hour workday and has the capacity to sit 6-8 hours in an 8-hour workday. Considering the claimant's subjective complaints of back pain and limited mobility, the claimant has the capacity to occasionally stoop, kneel, crouch, crawl, and climb stairs and ramps, but has no limitations in the ability to balance. The claimant has no limitations in manipulative abilities. Considering the claimant's subjective complaints of pain and the mental impairments, mentally the claimant has the capacity to understand, remember and carry out simple, routine tasks with the capability to utilize common sense understanding to carry out instructions, to deal with several concrete variables in standardized situations, and to sustain this mental ability consistent with the normal demands of a workday including regular breaks and meal periods. The claimant has the capacity to appropriately interact with supervisors and has the

---

[2] Light work requires the abilities to sit for six hours, stand or walk for six hours, lift up to 20 pounds at a time, and frequently lift or carry up to ten pounds during an eight-hour workday. 20 C.F.R. § 416.967(b); SSR 83-10, 1983 WL 31251 (1983).

> capacity for occasional interaction with coworkers and the general
> public. The claimant has the capacity to identify and avoid normal
> work place hazards and to adapt to routine changes in the work place.

(T. 25-30.) Fifth, the ALJ found that Plaintiff has no past relevant work. (T. 30.) Sixth, and finally, the ALJ found that there are other existing jobs in the national economy that Plaintiff can perform. (T. 30-31.)

### D. The Parties' Briefings on Their Cross-Motions

Generally, Plaintiff argues that the ALJ erred in assessing Plaintiff's credibility. ("DOT"). (Dkt. No. 10, at 4-18 [Pl.'s Mem. of Law].) Within this argument, Plaintiff disputes the ALJ's determination that Plaintiff had the physical RFC to perform light work. (*Id.* at 7.)

Generally, Defendant asserts two arguments in support of her motion for judgment on the pleadings. First, Defendant argues that the ALJ properly evaluated the evidence in determining Plaintiff's RFC. (Dkt. No. 13, at 6-11 [Def.'s Mem. of Law].) Second, Defendant argues that the ALJ properly assessed Plaintiff's credibility. (*Id.* at 11-14.)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be

deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.      Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920.

5

The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. ANALYSIS

### A. Whether the ALJ's Physical RFC Determination Was Supported by Substantial Evidence

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 13, at 6-11 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

RFC is defined as

> what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule.

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2).

"In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work." *Domm v. Colvin*, 12-CV-6640, 2013 WL 4647643, at *8 (W.D.N.Y. Aug. 29, 2013) (citing 20 C.F.R. § 404.1545[a][3]-[4]). The ALJ must consider medical opinions and facts, physical and mental abilities, non-severe impairments, and the plaintiff's subjective evidence of symptoms. 20 C.F.R. §§ 404.1545(b)-(e), 416.945(b)-(e). Social Security regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of . . . [a plaintiff's] impairment(s), including . . . [a plaintiff's] symptoms, diagnosis and prognosis, what . . . [a plaintiff] can still do despite impairment(s), and . . . [a plaintiff's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

The ALJ must consider opinions made by acceptable medical sources and may consider opinions from other sources, such physical therapists and social workers, to show how a claimant's impairments may affect his or her ability to work. 20 C.F.R. §§ 404.1513(c)(d), 416.913(c)(d). In formulating a plaintiff's RFC, an ALJ does not have to adhere to the entirety of one medical source's opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to

make an RFC finding that was consistent with the record as a whole."); *Zongos v. Colvin*, 12-CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014). Moreover, an ALJ is not required "explicitly to reconcile every conflicting shred of medical testimony." *See Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (finding that the ALJ was not required to reconcile two apparently inconsistent medical opinions; it was sufficient that the ALJ noted that he carefully considered the exhibits presented in evidence in reaching his decision). Finally, an ALJ's RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

Plaintiff briefly argues that she could perform no more than sedentary work, however she does not cite a medical opinion to support her argument. (Dkt. No. 10, at 7 [Pl.'s Mem. of Law].) A review of the record indicates that the only two physical medical opinions from the relevant period support the ALJ's RFC determination that Plaintiff could perform a range of light work, as discussed further below. (T. 407-11, 455-30.)

### i. Treating Physician Deep Bharaj, M.D.

Dr. Bharaj treated Plaintiff on at least three occasions, including twice in the six months before rendering his opinion on November 19, 2013. (T. 439-47.) On July 11, 2013, Dr. Bharaj assessed Plaintiff with a back sprain after carrying a heavy bag down stairs. (T. 448-51.) Upon examination of Plaintiff's spine, Dr. Bharaj observed abnormalities including tenderness to palpation of the lumbosacral spine and a straight leg raising test. (T. 451.) Dr. Bharaj counseled Plaintiff on proper lifting techniques and ordered an MRI examination of Plaintiff's spine. (T. 448-51.) In the follow-up examination on October 21, 2013, Dr. Bharaj no longer assessed Plaintiff with a back sprain. (T. 443-45.) Moreover, Dr. Bharaj observed that Plaintiff's overall

8

musculoskeletal system findings were normal with no muscle aches and no localized joint pain or stiffness; no sensory exam abnormalities were noted upon neurological examination; and Plaintiff had a normal gait and stance. (T. 439-45.)

On November 19, 2013, Dr. Bharaj completed a medical source statement of Plaintiff's ability to perform physical work-related activities. (T. 455-60.) Dr. Bharaj opined that Plaintiff could frequently lift and carry 50 pounds, continuously lift ten pounds, and continuously carry twenty pounds in an eight-hour workday. (*Id.*) Dr. Bharaj further opined that Plaintiff could sit, stand, and walk eight hours in an eight-hour workday, did not require the use of a cane to ambulate, and could frequently balance, stoop, kneel, crouch, crawl, and climb stairs, ramps, ladders, and scaffolds. (T. 456, 458 .) Additionally, Dr. Bharaj opined that Plaintiff could continuously reach, handle, finger, feel, push, and pull with her hands, and could frequently operate foot controls with both feet. (T. 457.)

Dr. Bharaj indicated that his opinion was supported by the MRI examination of Plaintiff's lumbar spine on July 17, 2013. (T. 455.) More specifically, the MRI study showed degenerative joint disease and facet hypertrophy in the lower lumbar spine without significant spinal canal stenosis or neuroforaminal narrowing; "mild" posterior disc bulge at L5-S1 without evidence of mass effect; and L4-L5 annular tear in the left neuroforaminal region without significant neuroforaminal narrowing. (T. 23-24, 27) (referencing T. 417-18.)

### ii. Consultative Examiner Tanya Perkins-Mwantuali, M.D.

On January 17, 2013, Dr. Perkins-Mwantuali examined Plaintiff and provided an opinion of her physical functional limitations. (T. 407-11.)

Upon examination, Dr. Perkins-Mwantuali observed that Plaintiff appeared to be in no acute distress, had a normal gait and stance, and did not use an assistive device. (T. 408.) Dr.

9

Perkins-Mwantuali observed that Plaintiff moved slowly, but did not appear to be in pain with movement. (*Id.*) Dr. Perkins-Mwantuali further observed that Plaintiff needed no help changing for the examination or getting on or off the examination table, and was able to rise from a chair without difficulty, however Plaintiff declined to squat and walk on heels and toes because it would hurt her back. (*Id.*) Examination of Plaintiff's spine showed some reduced ranges of motion and tenderness to palpation of the low lumbar region, left lateral neck, and posterior shoulder on the left. (T. 409.) Dr. Perkins-Mwantuali observed that Plaintiff declined to attempt to extend the lumbar spine, however straight leg raising tests were negative bilaterally. (*Id.*) Finally, Dr. Perkins-Mwantuali observed that Plaintiff had full strength in the upper and lower extremities, intact hand and finger dexterity, and full grip strength in her hands bilaterally. (T. 410.)

Dr. Perkins-Mwantuali diagnosed Plaintiff with herniated lumbar spine with back pain; and neck pain with history of herniated disc and decreased range of motion. (T. 410.) Dr. Perkins-Mwantuali's diagnoses noted that an x-ray study of Plaintiff's lumbar spine was negative and indicated that height of the vertebral bodies and the vertebral disc spaces were relatively well maintained and the pedicles were intact. (*Id.*)[3] In conclusion, Dr. Perkins-Mwantuali opined that Plaintiff had no more than mild to moderate limitations in bending, twisting, squatting, lifting, carrying, reaching, activity requiring use of the arms above shoulder level, and activity requiring a full range of motion of the cervical spine. (*Id.*)

For the foregoing reasons, the Court find that the ALJ's physical RFC assessment was supported by substantial evidence, including the medical opinions and examination findings of Dr. Bharaj and Dr. Perkins-Mwantuali.

---

[3] Dr. Perkins-Mwantuali did not indicate the date of the referenced x-ray study.

B.  **Whether the ALJ's Credibility Analysis Was Supported by Substantial Evidence**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 13, at 11-14 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

A plaintiff's allegation of pain is "entitled to great weight where . . . it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 [2d Cir. 1992]). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any

11

> medication taken to relieve symptoms; (5) other treatment received
> to relieve symptoms; (6) any measures taken by the claimant to
> relieve symptoms; and (7) any other factors concerning claimant's
> functional limitations and restrictions due to symptoms.

*Id.* (citing §§ 404.1529[c][3][i]-[vii], 416.929[c][3][i]-[vii]). Further, "[i]t is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses,' including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 [2d Cir. 1983]).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements regarding the intensity, persistence and limiting effects of these symptoms are unpersuasive. (T. 26.) Throughout the decision, the ALJ articulated the inconsistencies that she considered in assessing the allegations of Plaintiff's symptoms, and in determining that Plaintiff is not as limited as alleged. (T. 23-30.)

First, the ALJ considered inconsistencies in Plaintiff's statements regarding her activities and abilities, and cited record evidence suggesting that Plaintiff exaggerated her symptoms. For example, the ALJ noted that Plaintiff reported to consultative psychological examiner, Dr. Loomis, that she did not have friends, yet previously reported to an examining social worker that she enjoyed drinking with friends. (T. 27-28) (citing T. 62, 368). The ALJ further noted that Plaintiff reported to Dr. Loomis that she had not worked since 2001, yet her treatment notes indicated that she had worked providing day care services more recently than that. (T. 28, 48-50.) Moreover, the ALJ noted that Plaintiff reported that she could not walk for more than ten to 15 minutes, yet Plaintiff reported to a social worker that she enjoys dancing. (T. 24) (citing T. 368).

Second, the ALJ considered medical evidence of record that was inconsistent with Plaintiff's allegations of disabling symptoms, including the physical medical opinion of treating physician Dr. Bharaj discussed above in Part III.A.i. of this Decision and Order, and the mental medical opinion of State agency psychological consultant Dr. Tzetzo that Plaintiff could perform unskilled work. (T. 28.) Moreover, the ALJ noted that a July 2013 study of Plaintiff's spine showed degenerative joint disease and facet hypertrophy in the lower lumbar spine without significant spinal canal stenosis or neuroforaminal narrowing; "mild" posterior disc bulge at L5-S1 without evidence of mass effect; and L4-L5 annular tear in the left neuroforaminal region without significant neuroforaminal narrowing. (T. 23-24, 27) (referencing T. 417-18.)

Third, the ALJ considered Plaintiff's medical treatment and measures to relieve her symptoms, including medical evidence that supports, and does not support, Plaintiff's allegations. (T. 22-30.) For example, the ALJ noted that Plaintiff "had a positive straight leg raise sign, but the evidence does not indicate she underwent surgery or invasive treatment." (T. 26.) Rather, the ALJ noted that Plaintiff received "conservative treatment" for her lumbar and cervical spine impairments, including physical therapy and pain management. (T. 26-27.) The ALJ further noted that, by November 2013, Plaintiff was considered for additional physical therapy but deemed not a candidate. (T. 27.)

Fourth, the ALJ considered inconsistencies between Plaintiff's activities of daily living and her allegations of disabling symptoms. (T. 24-30.) For example, the ALJ noted that Plaintiff lived in an independent setting, dressed and bathed herself, made simple meals, performed light cleaning, and reported that she enjoyed dancing, listening to music, and playing with her grandchildren. (T. 24, 28.) The ALJ further noted that Plaintiff reported that she helped care for her grandchildren, socialized with family, and drank with friends. (T. 28.)

13

Fifth, the ALJ noted that Plaintiff returned to work activity by providing daycare services during the relevant period. (T. 13, 28.) Plaintiff argues that the ALJ erred by not noting that Plaintiff's wages for this work did not reach substantial gainful activity ("SGA") level. (Dkt. No. 10, at 13 [Pl.'s Mem. of Law].) Notably, an ALJ may consider a plaintiff's work history in assessing a plaintiff's credibility. 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 374186, at *5 (July 2, 2006). Moreover, the ALJ expressly found that Plaintiff has not engaged in substantial gainful activity since July 17, 2012, the application date. (T. 22.) Therefore, Plaintiff's argument is without merit.

Next, the Court turns to Plaintiff's argument that the ALJ erred by noting that the ALJ did not undergo surgical intervention because "failure to undergo surgery could be caused by factors which have no relation to the severity of the claimant's symptoms or underlying impairments." (Dkt. No. 10, at 13 [Pl.'s Mem. of Law].) The Court recognizes that an ALJ must not draw an adverse inference from a claimant's failure to seek or pursue treatment without first considering "any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7p 1996 WL 174186, at *8 (July 2, 1996). Nonetheless, while Plaintiff's argument lists general risks to surgery, Plaintiff fails to argue or cite evidence indicating that *she* did not undergo surgery due to any particular risk. (*Id.*)

Morever, the ALJ properly considered Plaintiff's conservative treatment and measures to relieve her symptoms. 20 §§ 404.1529(c)(3)(iv)-(vi), 416.929(c)(3)(iv)-(vi). A plaintiff may appropriately be deemed less credible "if the level or frequency of treatment is inconsistent with the level of complaints." SSR 96-7p, 1996 WL 174186, at *8 (July 2, 1996); *accord, Sickles v. Colvin,* 12-CV-0774, 2014 WL 795978, at *22 (N.D.N.Y. Feb. 27, 2014) (finding that the ALJ

properly cited Plaintiff's conservative treatment as a reason for discounting Plaintiff's credibility).

In any event, even without considering Plaintiff's lack of surgery, the ALJ's overall decision to discount Plaintiff's allegations was supported by substantial evidence as discussed above, including: (1) Plaintiff's statements regarding her activities and abilities; (2) medical opinion evidence and clinical findings; (3) Plaintiff's medical treatment history and measures taken to relieve her symptoms; (4) Plaintiff's activities of daily living; and (5) Plaintiff's work history, as discussed above. (T. 22-30.) Therefore, even if the ALJ erred by referencing Plaintiff's lack of surgical treatment, it would be harmless. *See Schlichting v. Astrue*, 11 F. Supp. 3d 190, 206-07 (N.D.N.Y. 2012) (finding that the ALJ's error in making an adverse inference from a plaintiff's failure to pursue treatment was harmless error where the credibility analysis was supported by substantial evidence).

Next, the Court turns to Plaintiff's arguments that the ALJ incorrectly cited various medical evidence and inappropriately relied on Plaintiff's ability to walk while she ignored other evidence that supported Plaintiff's allegations. (Dkt. No. 10, at 14-17 [Pl.'s Mem. of Law].) Regarding Plaintiff's argument that the ALJ erred by considering treatment records from September 2002, the ALJ reasonably reviewed Plaintiff's complete medical history since Plaintiff's alleged disability onset date of June 13, 2001. *See Domm*, 2013 WL 4647643, at *8 (stating that "the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work") (citing 20 C.F.R. § 404.1545[a][3]-[4]).

Plaintiff further argues that the ALJ incorrectly stated that a particular medical exam showed that Plaintiff "could walk without difficulty" because the examining physician stated

15

"GAIT: Tandem gait is normal. She is able to ambulate on her heels and toes without difficulty." (Dkt. No. 10, at 14-17 [Pl.'s Mem. of Law].) To the extent that Plaintiff may be understood to argue that the ALJ misrepresented or misunderstood the examination findings, a review of the evidence at issue indicates that the ALJ appropriately and accurately and summarized the medical record. (T. 26) (referencing T. 244-45.) Moreover, with the exception of a note that Plaintiff had a "slightly" antalgic gait (T. 482), the other medical records from the relevant period also consistently indicated that Plaintiff had a normal gait. (T. 408, 445, 450, 450).

Finally, regarding Plaintiff's argument that the ALJ ignored specific record evidence, the Court notes that "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Brault v. Soc. Sec. Admin., Comm'r,* 683 F.3d 443, 448 (2d Cir. 2012). When, as here, "the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir. 1983).

In sum, the ALJ appropriately used her discretion as fact-finder to determine that Plaintiff's statements were not credible. *Mimms v. Heckler,* 750 F. 2d 180, 186 (2d Cir. 1984.) "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1982). "It is the function of the Secretary, not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (quoting *Carroll*, 705 F.2d at 642) (internal quotation marks and alterations omitted). Accordingly, the Court must uphold an ALJ's

credibility determination where, as here, it is supported by substantial evidence. *Aponte*, 728 F.2d at 591.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: December 8, 2016
    Syracuse, New York

_____
Hon. Glenn T. Suddaby
Chief U.S. District Judge